MARK S. WICKLUND JD (PRIVATE ATTORNEY GENERAL)
THE WHITE HAT GROUP, INCORPORATED
STEFANIE O'NEILL (Pro Se) (PRIVATE ATTORNEY GENERAL)
7953 W. Mossy Cup Street
Boise, Idaho 83709
Tel: (208) 629-3995
Fax: (208) 362-6022
Email: Mark@whitehatgroup.org

U.S. COURTS

NOV 15 2012

Rcvd_____ Filed_____ Time_____
ELIZABETH A. SMITH
CLERK, DISTRICT OF IDAHO

**Private Attorney General's for Plaintiffs**

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STEFANIE O'NEILL, an individual, & JANE & JOHN DOES' 1-50 & ALL VICTIMS of DOMESTIC ABUSE in BLAINE COUNTY, IDAHO, et al.<br><br>Plaintiff's,<br>v.<br><br>RICK ALLINGTON, an individual, JODI FULLER, an individual, WALT FEMLING, an individual, MARK DALTON, an individual, GENE RAMSEY, an individual, PATRICIA SEPULVEDA, an individual, ROSE BECK, an individual, BLAINE COUNTY SHERIFF'S OFFICE, an Idaho Corporation, STATE OF IDAHO, DEPARTMENT OF CORRECTIONS, an Idaho Corporation and a department of the state of Idaho, et al., CURTIS MILLER, an individual, JIM THOMAS, an individual, ANGENIE McCLEARY, an individual, TOM BOWMAN, an individual, LAWRENCE SCHOEN, an individual, BLAINE COUNTY COMMISSIONERS, HAILEY POLICE DEPARTMENT.<br><br>Defendants. | Case No. _____<br><br>12-568-S REB<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

COMPLAINT AND DEMAND FOR JURY TRIAL, PAGE    1

Plaintiffs, **STEFANIE O'NEILL**, an individual, **JANE & JOHN DOES,' 1-50 & ALL VICTIMS OF DOMESTIC ABUSE in BLAINE COUNTY, IDAHO, et al.,** by and through their Private Attorney General [1] of record, Dr. Mark S. Wicklund JD, of The White Hat Group, Incorporated, as and for a cause of action against the Defendants states and alleges as follows:

## STATUS OF PARTIES

1. Plaintiff, Stefanie O'Neill, is and individual currently residing in Blaine County, Idaho.
2. Plaintiff, Jane & John Does' 1-50.
3. Plaintiff, All Victims of Domestic Abuse, currently residing in BLAINE COUNTY IDAHO.
4. Defendant, Rick Allington, is the City of Hailey, Idaho Prosecutor and an individual, residing in Blaine County.
5. Defendant, Jodi Fuller, an individual, is a Probation Officer for the State of Idaho Department of Corrections, residing in Blaine County.
6. Defendant, Walt Femling, an individual, is a Blaine County Sheriff, residing in Blaine County.
7. Defendant, Mark Dalton, an individual, is a Blaine County Sheriff, residing in Blaine County.
8. Defendant, Gene Ramsey, an individual, is a Blaine County Sherriff, residing in Blaine County.
9. Defendant, Patricia Sepulveda, is an individual, and was PACE Counselor for the City of Hailey, Idaho, now residing in the State of Virginia.
10. Defendant, Rose Beck, an individual, wis a Counselor for the City of Hailey, Idaho, now residing in State of Oregon.
11. Defendant, Blaine County Sherriff's Office, is an Idaho Corporation, is a governmental agency, and an Idaho Corporation,
12. Defendant, State of Idaho, Department of Corrections, as governmental agency and an Idaho Corporation, is part of the United States.
13. Defendant, Curtis Miller an individual and resides in Blaine County.

---

[1] The U.S. Congress codified the *PRIVATE ATTORNEY GENERAL* principle into law with the enactment of *Civil Rights Attorney's Fees Award Act of 1976, 42 U.S.C.§ 1988.*

14. Defendant, Jim Thomas, an individual and resides in Blaine County.
15. Defendant, ANGENIE McCLEARY, an individual, is Chairman of the Blaine County Commissioners, and resides in Blaine County.
16. Defendant, TOM BOWMAN, an individual, is was Vice Chairman of the Blain County Commissioners, and resides in Blaine County.
17. Defendant LAWRENCE SCHOEN, an individual, is Vice Chairman of the Blain County Commissioners, and resides in Blaine County.
18. Defendant, Blaine County Commissioners are a Division of Government for Blaine County Idaho.
19. Defendant, Hailey Police Department is the entity proscribed by the Town Council and the Mayor of Hailey.

## JURISDICTION AND VENUE

20. Jurisdiction lies in the District Court of the United States District Court for the District of Idaho pursuant to 28 U.S.C. §§ 1331, 1343(3), 1343(4), 42 U.S.C. § 1983, and the Constitution of the United States and more particularly the Fifth and Fourteenth Amendment. The further relief sought in this action is more fully spelled out below.
21. The claims made in this action arose within this judicial district.
22. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## HISTORY

23. The Plaintiff's ex-husband Mark Nelson was arrested for the first time in March of 2006 after a domestic violence altercation with the Plaintiff. **CR-2007-0002064**
24. The Plaintiff was taken to the hospital via ambulance. The Plaintiff I was 25 weeks pregnant and was held for observation for several hours.
25. No police officer, no Prosecutor, nor investigators came to the hospital or contacted the Plaintiff at any time after.
26. Moreover, the Plaintiff's in-laws were waiting for her and upon discharge, at which point that had made a threat to take the Plaintiff's unborn child if I pressed charges against their son.

27. The Plaintiff in the end backed down from intimidation, and without her testimony, at trial her ex-husband, Mark Nelson, was given a plea agreement for a lesser charge.
28. The lesser plea agreement for Mark Nelson included alcohol classes with Defendant Rose Beck, probation with Defendant Jodie Fuller, and community service. The Plaintiff felt a little hope that at least these requirements would help Mark Nelson not to return to his abusive behavior.
29. Defendant Rose Beck allowed Mark Nelson to clean her office and wash her car in lieu of classes or where she allowed him to destroy records of her court appointed clients in return for writing off all of his remaining community service. He had done some at the animal center but hated it because they were "mean" to Mark Nelson. Mark Nelson never destroyed the documents and left them sitting in his living at home, a HIPPA violation on the part of Defendant Rose Beck, and she wrote a letter to Jodi Fuller stating that Mark. Nelson had completed his hours with her.
30. Mark Nelson's court order however, did not include a clause of no drinking so the Plaintiff lived with continual fear and was beat on a regular basis.
31. Mark Nelson manipulated his alcohol counselor Defendant Ms. Becks, so much in fact, and with her knowledge and tacit agreement, that he often would drink on his way to or from her classes when he did attend.
32. 4 months or so into Mark Nelson's probation the Plaintiff again had to call the police for protection from Mark Nelson, because this time the abuse raged for two days and the Plaintiff now felt her newborn was at risk,
33. The Plaintiff finally called 911. Mark Nelson was finally arrested again although this time the Plaintiff was taken to the hospital, checked out and released.
34. The Plaintiff again never heard from any police officers, probation officers no one cared.
35. Early the next morning the Plaintiffs in-laws showed up at her home and threatened to take the Plaintiff's infant son.
36. Phil Nelson one of the in-laws told the Plaintiff, "He had spent 7 years fighting to get one grandson and would spend the rest of his life making sure he got the Plaintiff's kids."
37. Phil Nelson paid the Plaintiff to have an attorney he chose. Phil Nelson asked the Plaintiff to write a letter to the court stating she had been under the influence at the time of the altercation with his son Mark Nelson. The Plaintiff under fear of her child being taken by

the in-laws broke down and wrote the letter whereby Christopher Simms would not let the Plaintiff submit the letter to the court, knowing it was untrue, so that the Plaintiff did not perjure herself to the judge.

38. For a second time Mark Nelson made a plea agreement with the prosecutor's office was reached.

39. During Mark Nelson's sentencing, oddly enough Mark Nelson's old alcohol counselor Defendant Rose Beck brought her attorney with her in case Mark Nelson's attorney messed up Mark's case.

40. Mark Nelson received a longer probation this time, mandatory AA classes with Tyler Loerkhe, mandatory alcohol and drug testing, and the PACE Program for 52 weeks. Mark Nelson did attend many of the classes, especially at first. But for the first 4 months of his probation, there was no PACE counselor at all. Nelson was assigned to classes that did not exist. Then the Idaho Department of Corrections contracted with Patricia Sepulveda. At first, she was a hard nose on him, until they developed a friendship. She was even in the Plaintiff's home a couple of times.

41. While the Plaintiff was not happy, at least she felt this time Mark Nelson would get the help he needed and maybe there would be a chance for a normal life for the Plaintiff and her family.

42. Not the case, Mark Nelson again manipulated the system into to not even having to attend any of the classes court ordered, and could just phone in as long as he paid the counselors and probation officers.

43. After 18 months of probation, Defendant Jodie Fuller let Mark Nelson off supervised probation, and the drinking and the abuse started again, heavier than before against the Plaintiff.

44. The Plaintiff knowing that no one in the judicial system would help fell into desperation, while Mark Nelson slammed holes in walls, ripped cabinets apart, and made the Plaintiff go weeks without leaving her house because Mark Nelson forbade her to leave.

45. Plaintiff was so distraught that she began vomiting blood, amongst many other medical and emotional issues, when the Plaintiff asked Mark Nelson to go to the hospital he would tell her "we have no money."

46. The Plaintiff stood up to give her children some juice and completely collapsed. When she awoke, her legs would not function and she could not walk, she called Mark Nelson, whereby he had occasion to come home only ended up accusing the Plaintiff of "faking" her illnesses, and ultimately the Plaintiff did not walk for several days.

47. Mark Nelson took the children to the Plaintiff's mother's house to live.

48. The Plaintiff was completely failed by all of the Defendants involved from the police who did not protect her to her in-laws at the hospital that first night, to the prosecutor not once asking the Plaintiff if she was fearful for her life!

49. The Plaintiff actually had died because the system and advocates failed to "serve and protect."

50. During the time that Mark Nelson was on probation, the abuse continued and the Plaintiff still is in fear of Mark Nelson, even after the divorce the Plaintiff still lives in fear of the Police and Probation that will never protect her, and she feels if she does report domestic violence, she will lose her children because of the connections that Mark Nelson and the in-laws have with law enforcement and political officials in Blaine County

## GENERAL FACTUAL ALLEGATIONS

51. This is an action for declaratory relief stemming from "Notice of Intent to Bring Suit" letter, and years of neglect by the Defendants to curb domestic abuse forced on the Plaintiff by her ex-husband Mark Nelson a resident of Blaine County. This case outlines a violation of the Plaintiffs' First, Fifth and Fourteenth Amendment Rights, as well causes of action under the Idaho Tort Claims Act for negligence and infliction of emotional distress, stemming from threatening circumstances brought on the Plaintiff by numerous Defendants wherein the Plaintiff was concerned with loss of her children, her liberty and pursuit of happiness if continued to defend herself and children from the Defendants negligence in handling the Plaintiff and her families well-being. The

Defendants' actions were made under the color of law and in violation of Plaintiff's rights, and, as such, relief is sought under 42 U.S.C. § 1983.

52. Blaine County failed to abide by the rules and regulations established by law in accordance to the continuous domestic violence assaults by Mark Nelson (Ex Husband of the Plaintiff) on the Plaintiff and children. Moreover, because of the direct oversight and bungling of the domestic abuse endured over years by the Plaintiff is how the police officers of Blaine County violated Ms. O'Neill of her civil rights guaranteed under the United States Constitution.

53. The defendants infringed upon Ms. O'Neill's civil rights by way of Negligence Per Se, e.g., Intentional Infliction of Emotional Distress depicted upon their intentional oversight of following, and monitoring procedural and legal protocol required of their job title per the law.

54. During the year 2010 the Plaintiff had one meeting alone with Tom Bowman and Tom Brennan, whereby those individuals demanded and in some instances out right threatened Plaintiff stop her claims and investigation against her then ex-husband Mark Nelson whereby he was legally on probation and some of the defendants were his Probation officers working for the Idaho Department of Correction, Probation and Parole Department.

55. Ms. Oneill on several occasions assumed by several of the Defendants Jodi Fuller, Patricia Sepulveda and Rose Beck actions in different scenarios to stop any legal action against anyone involved in this case or the Plaintiff would be very sorry she had opened this situation.

56. But for the negligence of the Idaho Department of Correction Probation Department and its officers Ms. Oneill and her family would not have suffered or had to endure the abuse that Mark Nelson has dealt over the years.

57. But for the Negligence of The Blaine County Sheriff's Office, specifically Defendants, Femling, Ramsey, Miller, and Dalton, who refused to take a report against Mark Nelson based on the willful neglect of a vulnerable adult of the Plaintiff, thereby not protecting her person nor her minor children from emotional and physical damage form Mark Nelson.

58. The Plaintiff has been made to feel the pressure of emotional distress because she has been made aware of subpoenas that have been levied on her past medical records and internet records due to a statement she made on line that Defendant Walt Fleming was a member of the "good old boys club".

## COUNT ONE - 42 U.S.C. §1983

59. The Plaintiff hereby alleges the above paragraphs as a fully set forth herein.

60. The First Amendment guarantees a citizen's right to free speech.

61. The Fifth and Fourteenth Amendments of the United States Constitution ensure a citizen's right to due process under the law.

62. The Plaintiff enjoys the protections of the First, Fifth and Fourteenth Amendments.

63. The Defendants deprived the Plaintiff of her due process rights by intimidating the Plaintiff and her mother therefore chilling the "voice" of the Plaintiff because she was afraid of losing her children, and therefore could not provide safety for her family. Defendants' inattention and intimated threats carried significant weight because of the Defendants political and positions of power in various agencies' over the Plaintiff.

64. The Defendants violated the Plaintiff's First Amendment right to free speech by threatening physical, mental, life, liberty and the pursuit of happiness interests by threatening jail if she spoke of her situation, concerns, or suspicions related to improper conduct by the Defendant's.

65. Because of the violation of the Plaintiff's Constitutional rights, Plaintiff is entitled to nominal, actual and consequential damages.

66. Plaintiff seeks injunctive relief against the Defendant's to prevent continued abuse, defamation and slander of her character, stemming directly from the Defendant's previous unconstitutional acts, as such acts continue to improperly stigmatize the Plaintiffs.

### COUNT TWO-Negligence

67. The Plaintiff hereby alleges the above paragraphs as a fully set forth herein.

68. The Defendants owed a duty of "responsible care" to the Plaintiff.

69. Pursuant to the Idaho Tort Claims Act, I.C. §§6-901 *et seq*, all Defendants are jointly and severally liable for the acts of negligence by their agents/employees/Directors.

70. All Defendants are responsible, as *respondeat superior*, for the acts of their agents/employees/Directors.

71. The Defendants breached their duty by coercing behavior, intimidating the Plaintiff, threatening life, liberty, and the pursuit of happiness, when the Defendants knew or should have known their conduct was unreasonable.

72. The Defendants' conduct falls below the requisite standard of care applicable to them.

73. Because of the Defendant's negligence, the Plaintiff suffered damages, the exact amount which will be proven at trial.

74. Defendants failed to file charges under willful neglect of an vulnerable adult, I.C. 18-15.05

## COUNT THREE-Intentional Inflicion of Emotional Distress

75. The Plaintiff hereby alleges the above paragraphs as a fully set forth herein.

76. The Defendants conduct as set forth above was intentional and intolerable.

77. The Defendants intended to intimidate and cause other emotional distress to the Plaintiff.

78. The Defendants knew or should have known their threats would be taken seriously and would sufficiently disturb and disquiet the Plaintiff to stop her from investigating her suspicions and filing suit based on that investigation.

79. The Plaintiff has suffered extreme emotional distress because of the Defendants' negligent conduct.

80. Because of the Defendants actions, the Plaintiff suffered damages, the exact amount which will be proven at trial.

## COUNT FOUR-Negligence Per Se (Statutory Negligence)

81. The Plaintiff hereby alleges the above paragraphs as a fully set forth herein.

82. The Defendants acts stated above is quintessential Negligence Per Se. The cause of the defendant's behavior of avoiding Mr. Nelson's parole and conducting routine investigation was not just mean-spirited, but the Defendants conduct reflected a calculated plan to cause emotional harm. The alleged motive behind the Defendants conduct was retaliation for Ms. O'Neill exposing misrepresentations by the Probation Officers. All of the acts attributed to the defendants were so outrageous as to be utterly intolerable in a civilized community.

83. The Defendants' violation of Ms. O'Neill's civil rights caused permanent physical and emotional injury upon her due to the lack of follow through with Mr. Nelson's domestic assaults spanning five years and while a ward of the State of Idaho as a Parolee.

84. The Defendants negligence in overseeing legal procedures and protocol under the color of state caused violation of the Plaintiffs due process of the Fourteenth Amendment.

85. The Defendants negligence due to the violation of a public duty demonstrated negligence per se constituting intentional infliction of emotional distress. Wherein, Ms. O'Neill suffers emotional anxiety, memory loss, insomnia, stage 3 liver damage, arthritis, and atrophy of muscles. You take the Plaintiff as you find them.

86. Due to Ms. O'Neill's emotional and bodily injuries, she is unable to work and is home bound, not to mention, life-long physical therapy and counseling.

## DEMAND FOR JURY TRIAL

87. The Plaintiff hereby alleges the above paragraphs as a fully set forth herein.

88. The Plaintiffs hereby demand a jury trial as to all causes of action raised in this complaint.

## PRAYER FOR RELIEF

**AS TO ALL COUNTS :** The Plaintiff hereby alleges the above paragraphs as a fully set forth herein and request the following:

1. Award Plaintiff's nominal and compensatory damages in the amount of $18,600,000.00.

2. Award Plaintiff's costs and attorney's fees pursuant to 42 U.S.C. § 1988 under the Private Attorney General doctrine.

The undersigned declares under penalty of perjury that she is the plaintiff in the above action, that she has read the above complaint, and that the information contained therein is true and correct. 28 U.S.C. §1746; 18 U.S.C §1621.

Executed at __Hailey Idaho__ on __13__ 20_12_.
(Location)                              (Date)

__Stefanie O'Neil__
Signature

Acknowledgment of Individual

STATE OF IDAHO

COUNTY OF __Blaine__

On this __13th__ day of __November__, in the year of __2012__, before me, __Sandra Ehrmantraut__, a Notary Public, personally appeared __Stefanie M O'Neill__, known or identified to me (or proved to me on the oath of _____), to be the person whose name is subscribed to the within instrument, and acknowledged to me that he/she/they executed the same.

(Seal)

__[signature]__
Notary Public

Printed Name: __Sandra P Ehrmantraut__

Commission Expires:

__7.26.2018__

SANDRA EHRMANTRAUT
Notary Public
State of Idaho

COMPLAINT AND DEMAND FOR JURY TRIAL, PAGE   13

3. Pay all Plaintiffs medical and psychological complications exacerbated through the inaction by Defendants in their handling of the Plaintiffs safety.

4. Punitive Damages: Blaine County's conduct was with malice, outrageous, and reckless. Wherein, the Defendants' unlawful conduct acted intentional in recklessly disregarding the Plaintiff's civil rights and due process's protected by the United States Constitution.

5. Consequential and Special Damages as the Court sees fit.

6. A permanent injunction prohibiting the Defendants continued defamation, slander and threats to the Plaintiff.

7. An order that all records both medical, psychological, and reports used in unconstitutional processes be destroyed or divested from the record, and the Defendants certify those documents that were shared improperly to other entities illegally.

8. Grant such other and further relief as this Court deems necessary and proper.

DATED this 13 day of November 2012.

*Stefanie O'Neill* (signature)
Stefanie O'Neill (Pro Se)

*Dr. Mark Wicklund* (signature)
DR. MARK S. WICKLUND JD
Private Attorney General for Plaintiff's

**DECLARATION UNDER PENALTY OF PERJURY**